# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5698 | **DATE** | 3/27/2002 |
| **CASE TITLE** | Leonard Levy and Jacqueline Levy vs. Chubb Corporation, et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ☒ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Jacqueline Levy's Motion for Summary Judgment with regard to Counts III and IV is denied, while defendant's Motion for Summary Judgment for Counts III and IV is granted. Defendant's Motion for Summary Judgment for Count II is granted, while defendant's Motion for Summary Judgment with reference to Count I is denied. In addition, plaintiff's Motion to strike defendant's Rule 56.1 Statement of Facts is denied.

(11) ☒ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | **MAR 28 2002** | | |
| | Notified counsel by telephone. | | date docketed | | 123 |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | | | date mailed notice | | |
| WAP | courtroom deputy's initials | | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

LEONARD LEVY and JACQUELINE LEVY,

        Plaintiffs,

    v.

CHUBB CORPORATION d/b/a CHUBB GROUP OF INSURANCE COMPANIES, and GREAT NORTHERN INSURANCE COMPANY,

        Defendants.

**MAR 2 7 2001**

Judge Harry D. Leinenweber
U. S. District Court

Case No. 00 C 5698

Hon. Harry D. Leinenweber

**DOCKETED**

MAR 2 8 2002

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Leonard Levy and Jacqueline Levy (the "Levys") bring this suit against the Great Northern Insurance Company ("Great Northern") for the September 1, 2000 denial of the Levys' insurance claim for the July 26, 1999 fire (the "Fire") at their 58 Diana Road, Ogden Dunes, Indiana home (the "Ogden Dunes home"). Great Northern denied the Levys' claim on four alleged grounds: 1) Leonard Levy was responsible for the Fire; 2) Leonard Levy intentionally concealed his involvement in causing the Fire; 3) Jacqueline Levy concealed and misrepresented material facts regarding Leonard Levy's involvement in causing the Fire; and 4) the Levys' financial circumstances immediately preceding the Fire. Great Northern additionally denied Jacqueline's claims in that: 1) she, too, concealed and misrepresented material facts and 2) Mr. Levy would

benefit if she received any insurance recovery. The Levys, in their original complaint, claim that Great Northern: I) breached its insurance contract; II) tortiously breached its duty to deal with the Levy's in good faith; III) specifically breached its contract with Jacqueline Levy; and IV) tortiuously breached its duty to deal with Jacqueline Levy in good faith.

Jacqueline Levy now brings this Motion for Summary Judgment on Counts III and IV based on her innocence of the alleged incendiary actions by Mr. Levy to cause the Fire, thereby granting her a severable interest to the insurance recovery.

Defendant brings a Cross-Motion for Summary Judgment with reference to Counts II and IV (the "bad faith claims") in that Great Northern had a reasonable basis for denying plaintiffs claims for insurance based on indisputable evidence that the property was destroyed by arson and the Levys' powerful financial motive for destroying the property. In addition, defendant argues that summary judgment should be granted with reference to Counts I and III (the "contract claims") in that both Leonard and Jacqueline Levy voided any insurance coverage by misrepresenting or concealing material facts in the course of Great Northern's investigation.

## BACKGROUND

On July 26, 1999 at around 4:30 a.m., the Ogden Dunes home was destroyed by an explosion and fire where anti-Semitic and anti-African-American graffiti was found on one of the remaining garage

walls.   Throughout the weekend of the fire, the Levys were in
Skokie, Illinois to attend the wedding festivities of Mr. Levy's
son.   In particular, due to the wedding shower for their future
daughter-in-law on Saturday, July 25, 1999, the Levys checked into
the North Shore Doubletree Hotel at 1:27 p.m. on July 25, 1999 and
checked out at 12:02 p.m. on July 26, 1999.   While only Mrs. Levy
attended the wedding activities, Mr. Levy states that he stayed
within the hotel for the entire 48 hour weekend.

Four years prior in October 1995, the Levy placed their Ogden
Dunes home on the market while moving from that residence in the
summer of 1997 to a smaller home in Crown Point, Indiana, stating
that they no longer needed the responsibilities of a larger home.
Mr. Levy negotiated the terms of the listing agreements with two
different real estate agents where the listed price ranged from
$5.25 million in 1995 to $3.1 million in 1997.

On about October 1998 Ms. Andrea Lee, an African-American
women, expressed an interest in purchasing the property for an
agreed price of $2.75 million after she received the proceeds from
a large settlement agreement.   The closing date of December 18,
1999 was set, but due to complications in Lee's settlement the
closing did not occur.   The closing date was reset for January 5,
2000, but due to further settlement complications the sale to Lee
fell through, which forced the Levys to relist the Ogden Dunes home
and place it back on the market.

- 3 -

Defendant remains highly suspicious of plaintiffs' actions in the months preceding the Fire and charge that the immediate demand of the Ogden Dunes home keys from their children as evidence of intent to commit arson. Plaintiffs counter that while the Ogden Dunes home was unoccupied, except for various small items, Brian and Kevin Levy (their sons) held parties at the home. To protect against any potential liability, the Levys requested the return of their keys.

After the fire the Levys immediately filed their insurance claims, where Mr. Levy signed at least nine release forms, without the benefit of legal representation, allowing Great Northern liberal access to his financial records. Mrs. Levy contends that until the date of the Fire, she had no interest or concern with the financial activities of her family. The Levy family maintained two checking accounts, one with the Bank of America and another with NBD Bank. The Bank of America account solely dealt with family bill payments under Mr. Levy's direction. Mrs. Levy had control over the NBD Bank account, although she claims to have rarely used it, instead preferring to deal only with one credit card and cash, which she received from her husband upon her asking. Mr. Levy contends that through cashing in on several of his family's trusts and life insurance polices and the sale of art from his home, he was financially stable for at least the next six months, where his account balance as of August 17, 1999 was $58,813.95 - twenty-two

days after the Fire. Mr. Levy acknowledges in his depositions that the sale of their home was necessary to maintain their lifestyle, yet he also claims that they were not "motivated" sellers of their home and made no such references to any of their real estate agents. The Levys remained current on all insurance premiums, and coupled with the fact that the Levys fully cooperated with all aspects of Great Northern's investigation, they feel that the defendant had no basis to deny their claim, but rather had always intended to do so. Def. Rule 56.1 Statement of Facts.

Reports obtained from federal, state and local law enforcement agencies confirm that an intentional human act was necessary for the explosion of the Ogden Dunes home. An August 30, 1999 Report of Investigation by the Department of the Treasury Bureau of Alcohol, Tobacco and Firearms (the "ATF Report") states:

> After careful examination of this fire scene along with any relevant reports and interviews, it was the combined conclusion of the investigators at this scene that the cause of this fire should be classified as incendiary. This was due to the recovery of evidence of the incendiary devices from the basement and the disconnection of various natural gas unions and opening of fireplace values. The incendiary devices and natural gas were supposed to aid in the complete destruction of the residence. However, due to improper concentration of natural gas, these items were not destroyed in the fire or explosion. It is also believed that additional items, possibly accelerants, were placed on the main floor of this structure, specifically in the living and dining room area which were located in the northwest corner of the structure.

The ATF Report, Def. Ex. 7 at 0002092-93.

- 5 -

The ATF Report is also noteworthy in that it incriminates the Levys' sons, Brian and Kevin, as the key suspects of the Ogden Dunes home arson. Plaintiffs. Rule 56.1 Statement of Facts.

In addition, Great Northern cites to the State Fire Marshal's report which states:

> As the debris was being removed, a red plastic container was found on top of the debris, near the bar area. In smelling the contents of the container, a strong odor associated with gasoline was detected in the family room. A sectional sofa and carpet was found to contain this odor. An accelerant canine from the Evansville Fire Department was brought to the scene. The animal alerted in several locations where the odor of gasoline could be smelled. . . .

> During debris removal found [sic] was a white in color extension cord. The ends of this extension cord had no insulation on one end. This cord was found with the ends in a plastic container. The container did have some type of liquid in it. That liquid has been sent to the A.T.F. lab to determine its identity. Near the cord was another orange heavy duty extension cord. It is the opinion of this investigator that this was some type of incendiary device.

Def. Ex. 7 at 0002108.

Having established arson as the primary cause of the explosion at the Ogden Dunes home, the defendant believes that due to the Levys' heavy insurance policy on the unoccupied home, the arson's identity can only lead to Mr. and Mrs. Levy. The defendant avers that the Levys had a strong financial incentive to destroy the property and create an insurance claim, as the Ogden Dunes home was worth $4.128 million if destroyed, while the accepted offer from

the defaulted potential purchaser, Andrea Lee, was only $2.755 million.

The defendant further contends that aside from the potential arson committed by the Levys, they also misrepresented material information, such as the real identity of the potential purchaser, Andrea Lee, and the Levys' false reliance on his brother's vast wealth as a means to counter the allegation of their dire financial situation. First, defendant is skeptical of Andrea Lee's position as a prospective purchaser in that she failed to appear for two closing dates and was a public assistance recipient.

Second, various financial records show that, contrary to Mrs. Levy's statements to Great Northern and in her depositions, the Levys did possess a financial motive to commit arson. Defendant contends that suspicious financial transactions occurred both before and after the date of the fire. Aside from Mr. Levy's cashing out various life insurance polices and trusts, their combined credit card debt rose dramatically while their stock values dropped precipitously in the year of the fire.

In an attempt to evidence their lack of financial incentive, Mrs. Levy testified that Mr. Levy's wealthy brothers would help them cope with any financial difficulties. Yet, defendant notes the apparently contradictory testimony of Mr. Levy in his current divorce proceedings, where he testified to an acrimonious relationship between he and his family, and where his brother

placed a one-time $20,000 financial cap on any further cost of living financial assistance, although he agreed to pay for Mr. Levy's health insurance and legal fees. Def. Ex. 56 at 4-45.

Lastly, defendant believes that the hotel stay was a pretext to create an alibi for the fire that occurred in the middle of that weekend. Defendant claims that the Levys had no real need to stay at the hotel, considering that the hotel was only fifty-five miles from the Ogden Dunes home and sixty-six miles from the Levys' home in Crown Point. Def. Ex. 20. Plaintiffs counter this claim by showing that they had a custom of staying in the city whenever family affairs called them to Chicago.

After taking into consideration the Levys' financial situation, in conjunction with the fact that the Ogden Dunes fire was committed by arson, Great Northern, through its worldwide claims committee headed by Michael Marchio, denied the Levys' claim.

### ISSUES

Defendant premises its denial of Levys' policy with the Great Northern Insurance Company on two grounds. First, their policy specifically provided that coverage was excluded for intentional acts, such as arson. Second, their policy becomes void once an insured intentionally conceals or misrepresents any material fact relating to its policy before or after a loss. *Id.* at 0001629,

0001632, 0001638, 0001640. Therefore, the defendant should be granted summary judgment against all of plaintiffs' four counts.

Plaintiffs, on the other hand, believe that summary judgment should be granted on Counts III and IV by Jacqueline Levy in that she is an "innocent co-insurer" to the policy and should not be held liable to the alleged actions of arson, where only Mr. Leonard Levy has been named.

Thus, this Court will first address Jacqueline Levy's two claims, which in turn answer defendant's Motions for Summary Judgment of Counts III and IV, then answer Great Northern's Motions for Summary Judgment regarding Counts I and II.

### DISCUSSION

### Jurisdiction

While the Levys are residents of Indiana, the Great Northern Insurance Company, a subsidiary the Chubb Corporation, was incorporated under the laws of the State of Minnesota with its principal place of business in Warren, New Jersey. On February 28, 2001 this Court ruled that through the Illinois long-arm statute, jurisdiction against Great Northern was proper. *Levy v. Chubb*, 2001 WL 204793 (N.D.Ill.)

The Court is now faced with the issue of choice of law in the plaintiffs' breach of insurance contract claim with Great Northern. While the venerable *Erie* doctrine holds that in diversity jurisdiction federal courts must look to the forum in which it sits

- 9 -

for substantiative law, the Seventh Circuit has outlined the growing trend of *depecage* (process of cutting something into pieces) in Illinois law that allows the district courts to weigh the "interests and policies of [each contact state] as they relate to 'each transaction in issue.'" *International Adm'rs, Inc. v Life Ins. Co. of North America,* 753 F.2d 1373, 1376 n. 4 (7th Cir. 1985); *Ruiz v. Blentech Corp.,* 89 F.3d 320, 324 (7th Cir. 1996). Thus, the alternatives are Illinois or Indiana substantive law.

However, the Seventh Circuit cautioned in *International Adm'rs, Inc.,* 89 F.2d at 1376 that, "the choice of law is not made once for all issues; [the trend] is to decide the applicable law for each issue separately" based upon the Restatement (Second) of Conflicts of Law that applies the law of the state with the most significant relationship to the transaction at issue. *Id.* citing *Ingersoll v. Klein,* 46 Ill.2d 42 (1970). Due to the discrepancy between Illinois and Indiana law concerning the spouse's position as an "innocent co-insurer," the Court must commence the analysis of state contact comparison to determine which state's law is to apply.

First, the Court notes that neither party has raised the issue of the applicable choice of law, where this Court infers *de facto* Indiana law applicability due to plaintiffs' failure to raise the issue in its previous briefs. In addition, the Seventh Circuit chided the parties in *International Adm'rs, Inc.,* (a case

remarkably parallel to the one at bar) that, "we are certain that it is not the job of the trial judge to do the parties' work for them." *Id.* Therefore, the Court's analysis to Indiana law's applicability simply restates what has been tacitly assumed by the two complaints.

Second, plaintiffs' originally claimed federal jurisdiction in Illinois for its breach of the insurance contract, but the central issue on summary judgment pertains to Jacqueline Levy's status in her contract and punitive claims against Great Northern for its denial of her severable share of the insurance due to the fire of her Ogden Dunes home in Indiana.

While Illinois and Indiana law are substantially similar in most respects with reference to breach of fire insurance claims, the primary issue for Jacqueline Levy concerns her status as an "innocent co-insured." The distinction is key to the choice of either Illinois or Indiana law, in that Indiana retains a separate status for spouses. However, as the issue of Mrs. Levy's status at the time of the fire, the fire itself, and the issues of fraud and damages all took place in Indiana, the Court determines that the balance tips in favor of Indiana as the referenced forum. Furthermore, since neither party has raised the issue of choice of law, the Court determines that the degree of contacts with Indiana is greater.

## Standard

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, the evidence must create more than "'some metaphysical doubt as to the material facts.'. . . [As] a mere scintilla of evidence in support of the nonmovant's position is insufficient . . . [A] party will be successful in opposing [the motion] only when it presents 'definite, competent evidence to rebut the motion.'" *Albiero v. City of Kankakee* 246 F.3d 927, 932 (2001) citing *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000); see also, *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-257 (1986). In addition, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *Nieman Marcus Group, Inc. v. Quast Transfer, Inc.,* 1999 WL 436589 (N.D. Ill.). Overall, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine" issue for trial. *Mechning v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988).

## Jacqueline Levy

Jacqueline Levy states two causes of action for which she moves for summary judgment. First, Mrs. Levy contends in Count III that Great Northern breached its policy contract against her in that she is entitled to recover under the Indiana laws of the "innocent co-insured." Second, Mrs. Levy argues in Count IV that defendant breached its duty of good faith to Mrs. Levy when defendant specifically requested that its accountants gather facts to prove that Mrs. Levy knew about the dire conditions of her family finances.

First, Mrs. Levy claims that as an "innocent co-insured" she is absolved from any allegations that deny her claims to the insurance recovery. A plain reading of the Levys' insurance policy demonstrates the severable nature of the Levys' interest. The Policy states, in relevant part:

> **Intentional Acts:** We do not cover any loss caused intentionally by you or a family member, or by a person directed by you or a family member to cause a loss. But we do provide coverage for you or a family member who is not responsible for causing the intentional loss. An intentional act is one whose consequence could have been foreseen by a reasonable person.

Plaintiff, Motion for Summary Judgment, p. 12.

In addition, plaintiffs argue that Great Northern concedes that Mrs. Levy was never implicated in the alleged arson, but rather attempts falsely to excuse her of misrepresenting facts as to the state of her husband's wealth and their financial

circumstances.  Specifically, Great Northern offered four bases for

its contention of Mrs. Levy's material misrepresentations as

follows:

> 1.  Jacqueline Levy concealed and/or misrepresented material facts concerning the financial condition fo the family;
>
> 2.  Jacqueline Levy stayed with her husband for two nights at a hotel in Skokie, IL for the stated reason of attending a wedding shower a short distance away from her home preceding the fire;
>
> 3.  Jacqueline Levy was aware that Leonard Levy had requested their children return the keys to the Ogden Dunes house before the fire;
>
> 4.  Jacqueline Levy knew the status of Andrea Lee's attempts to purchase the house.

While under Indiana law, an "innocent co-insured" is allowed

some latitude with reference to insurance claims, her rights depend

upon the degree of control by the alleged arsonist in the shared

policy and the level of knowledge, or lack of knowledge, by the

innocent insurer.  Indiana law, though, retains a separate status

for spouses.  Generally, insurance recovery depends on whether the

co-insured's obligations and interests are considered joint or

severable.  While severability does not impute the wrongful acts of

one co-insured to the innocent co-insured, Indiana law will not

allow recovery if the rights and obligations of the co-insured are

joint.  *Iemma v. Adventure RV Rentals, Inc.*, 632 N.E.2d 1178, 1182

(1994).  Furthermore, *Westers v. Auto-Owners Insurance Co.;* 711

F.Supp.  946,  950  n.1  (1989)  held  that  innocent  spouses  were

precluded from recovering on a fire insurance policy where there is evidence that both spouses will share in the proceeds of the insurance. Citing *Fuston v. Nat'l. Mut. Ins.Co.,* 440 N.E.2d 751, 754 (Ind.App. 1982).

Jacqueline Levy argues that she is presently in the process of divorcing her husband, thus can insure that the proceeds will not benefit her husband. Yet, the fact remains that she is still presently married to Mr. Leonard Levy and was his wife and full partner throughout the activities that surround the insurance claim. Therefore, Jacqueline Levy's Motion for Summary Judgment with regards to Count III, breach of insurance contract with Jacqueline Levy, is denied, while defendant's Motion for Summary Judgment with regards to Count III is granted.

Second, Mrs. Levy argues that Great Northern breached its duty of good faith toward her when it requested financial documents and denied Mrs. Levy's claim due to her alleged misrepresentations throughout the investigations. Specifically, Mrs. Levy asserts that defendant's accountant, Mr. Mark Hutton, was still unsure whether Mrs. Levy knew of her family's financial situation when he sent the following email to defendant's attorney, Mr. Rick Sudekum, on June, 17, 2000:

> With respect to Mrs. Levy, I would like to know whether there is any date in re the payments made by Mr. Levy to Mrs. Levy. Can you quantify and track on a monthly basis the transfers made to [the] Mrs. Levy's bank account? I would like to know whether there is any information to suggest that Mrs. Levy had less money to

> spend during the relevant time period, Jan. '97 through
> Sept. '99.  Stated differently, from your review can you
> tell me whether Mrs. Levy was aware of the perilous
> financial condition of the family finances.

Plaintiff, Rule 56.1, Statement of Facts.

In essence, Mrs. Levy in Count IV seeks punitive damages against Great Northern for its breach of its duty of good faith in its investigations of the Ogden Dunes arson.  However, with regard to issues of punitive damages in arson cases, Indiana law clearly outlines a "right to disagree" privilege for insurance companies and requires proof of malice to be "clear and convincing" for a plaintiff to prevail.  *Westers*, 711 F.Supp. at 948, citing *Wolf Chevrolet, Inc. v. Rovertson,* 519 N.E.2d 135 (Ind. 1988).  In addition, punitive damages requires more than just a breached contract, but rather a separate and independent tort, where "in order to infer malice or oppressive conduct from an insurance company's failure to pay a claim there must be a complete '[a]bsence of any reasonable ground for denying liability. . . '" *Hoosier Ins. Co. Inc. v. Mangino*, 419 N.E.2d 978, 983 (Ind.App. 1981), *Gray v. American Family Mutual Insurance Co.;* 825 F.Supp. 203 (S.D. Ind. 1993).

Here, it is apparent that Great Northern was exercising its privilege to disagree.  While there is evidence that seems to indicate that Mrs. Levy was ignorant of her family's financial situation, there is  no "clear and convincing" evidence of malice in Great Northern's "right to disagree."  Therefore, Jacqueline

Levy's Motion for Summary Judgment with regard to Count IV, tortious breach of duty of good faith to Jacqueline Levy, is denied. And inversely, defendant's Motion for Summary Judgment to Count IV is granted.

### Great Northern

Great Northern claims that there are no material issue of fact concerning plaintiffs' claims of breach of the insurance contract, (Count I) or in their claims for the tortious breach of good faith in their dealings with them, (Count II); therefore summary judgment is proper.

With reference to Count II, tortious breach of its duty to deal in good faith, defendant has outlined that the "right to disagree" rule in Indiana clearly grants Great Northern an insurance privilege with reference to punitive claims, yet the rule does not extend to contract claims alone, Count I. *Westers*, 711 F.Supp. at 946-50; *Gray v. American Family Mutual Insurance Co.*; 825 F.Supp. 203 (S.D. Ind. 1993). The question then becomes, Does Indiana's 'right to disagree' extend to Count I, plaintiff's beach of the insurance contact claim?

As reasoned in the analysis of Jacqueline Levy's tortious breach of duty of good faith, (Count III), Great Northern retains the "right to disagree" without fear of punitive claims upon evidence that arson was the instrument that caused the Ogden Dunes home fire. Thus, defendant's Motion for Summary Judgment with

regard to Count II is granted. However, the issue becomes more complicated when the complaint pertains to just the breach of the insurance contract, (Count I). Key issues remain unsettled that require jury review; therefore, defendant's Motion for Summary Judgment for Count I, breach of the insurance contact, is denied.

Motions for summary judgment mandate that facts be viewed in light most favorable to the nonmoving party. Great Northern prefaces its denial of its contract claim on two primary grounds. First, Mr. Levy committed arson. Second, the Levys' committed fraud by making material misstatements of fact as to their financial circumstances, which breaches the underlying insurance agreement.

As to the issue of arson, several factors remain unclear as to whether Mr. Levy actually committed the act. The evidence to infer the nexus of Mr. Leonard Levy as the proximate cause to the arson of the Ogden Dunes home, while substantial, is still circumstantial and raises additional issues of material fact which survive summary judgment review. First, the State Fire Marshall's Police Report and the ATF Report name Brian and Kevin Levy as the lead suspects to the alleged arson, not Mr. or Mrs. Levy. Second, the defendant's failure to investigate fully the hate crime aspect of the alleged arson calls into question other potential relevant factors of the alleged arson. The defendant's claim that the

dearth of hate crimes in Ogden Dunes community mitigated their materiality does not preclude their relevance now.

Lastly, under Illinois law elements of common law fraud require that the representation be a 1) statement of material fact, instead of a mere promise or opinion, that is 2) false, where the person making the statement 3) must know or believe that the representation is false, which was 4) reasonably relied upon for the truth of the statement which caused the other party 5) to affirmative act, leading to the 6) injury of the person who relied upon the material statements. *Allendale Mutual Insurance Co., v. Bull Data Systems, Inc.*, 1992 WL 159334 (N.D.Ill.).

Here, defendant's claims that the conflicting misrepresentations of both Mr. and Mrs. Levy in their deposition as to the potential assistance of Mr. Levy's brother's wealth as material grounds to terminate the insurance contact does not appear to reach the threshold of fraud. In addition, such a question is one of fact that requires jury determination. While the Court agrees that misrepresentation of one's financial status, such as false credit card statements or stock dividends, is grounds for a breach of an insurer's contract, the conflicting testimonies of Mr. and Mrs. Levy as to his brother's wealth does not constitute materiality as a matter of law. In fact, their conflicting statements in the depositions for this proceeding, compared to those of Mr. and Mrs. Levy's divorce suit, seem to only point to yet another issue of

material fact in the plaintiffs' breach of contract claim, (Count I), that denies defendant's Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, Jacqueline Levy's Motion for Summary Judgment with regard to Counts III and IV is denied, while defendant's Motion for Summary Judgment for Counts III and IV is granted. Defendant's Motion for Summary Judgment for Count II is granted, while defendant's Motion for Summary Judgment with reference to Count I is denied. In addition, plaintiff's Motion to strike defendant's Rule 56.1 Statement of Facts is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: _March 27, 2002_